

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-23-1995

# United States v USX Corp.

Precedential or Non-Precedential:

Docket 94-5681

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v USX Corp." (1995). *1995 Decisions*. Paper 278.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/278

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____
No. 94-5681
_____

UNITED STATES OF AMERICA,

v.

HUGHES, HUBBARD & REED,

Intervenor-Plaintiff

v.

USX CORPORATION; ATLANTIC DISPOSAL SERVICE,
INC.; EASTERN SOLID WASTE EQUIPMENT COMPANY,
INC.; A.C. REALTY; CHURCHDALE LEASING INC.;
PAUL C. MURPHY, INC.; ATTWOODS, INC.; ALVIN
WHITE; AVE MARIA CARITE, AS EXECUTOR OF THE
ESTATE OF CHARLES CARITE; STEPHEN MINER, AS
EXECUTOR OF THE ESTATE OF CHARLES CARITE,

Defendants

and

ALVIN WHITE; A.C. REALTY; ANTHONY CARITE,
JR., AVE MARIA CARITE, AS EXECUTOR OF THE
ESTATE OF CHARLES CARITE; STEPHEN MINER, AS
EXECUTOR OF THE ESTATE OF CHARLES CARITE;
ATLANTIC DISPOSAL SERVICE, INC.; USX
CORPORATION; THE HARLEYSVILLE MUTUAL
INSURANCE COMPANY,

Third-party Plaintiffs

v.

CHUBB GROUP OF INSURANCE COMPANIES; FIRST
STATE INSURANCE COMPANY; THE HARLEYSVILLE
MUTUAL INSURANCE COMPANY; INTERSTATE FIRE AND
CASUALTY COMPANY; PENNSYLVANIA MANUFACTURERS
INSURANCE COMPANY; SAFETY MUTUAL CASUALTY
CORPORATION; WYLE LABORATORIES, INC.; EASTERN

1

SOLID WASTE EQUIPMENT COMPANY, INC.;
CHURCHDALE LEASING INC.; A.C. REALTY;
ATTWOODS, INC.; PAUL C. MURPHY, INC.; ALVIN
H. WHITE; AVE MARIA CARITE, AS EXECUTOR OF
THE ESTATE OF CHARLES CARITE; STEPHEN MINER,
AS EXECUTOR OF THE ESTATE OF CHARLES CARITE;
ANTHONY CARITE, JR.; UTICA MUTUAL INSURANCE
COMPANY,

                  Third-party Defendants

ATLANTIC DISPOSAL SERVICE, INC., ALVIN WHITE,
A.C. REALTY, AVE MARIE CARITE, AS EXECUTOR OF
THE ESTATE OF CHARLES CARITE, AND STEPHEN
MINER, AS EXECUTOR OF THE ESTATE OF CHARLES
CARITE,

                  Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 90-3068)

Argued July 26, 1995

Before:  BECKER and ALITO, Circuit Judges,
VANASKIE, District Judge*

(Filed October 23, 1995)

*The Honorable Thomas I. Vanaskie, United States District Judge
for the Middle District
 of Pennsylvania, sitting by designation

Sanford F. Schmidt (Argued)
Gerston, Cohen & Grayson
20 Kings Highway West
Haddonfield, NJ  08033

Attorney for Appellants
          Atlantic Disposal
Service, Inc.,

Alvin White and A.C. Realty

Joseph H. Kenney (Argued)
Kenney & Kearney
220 Lake Dyrive East
P.O. Box 5034
Cherry Hill, NJ  08034

Attorney for Appellants
Ave Maria Carite and Stephen
Miner,

 as Executors of the Estate of
Charles

 Carite

Albert M. Ferlo, Jr. (Argued)
United States Dept. of Justice
Environment & Natural
Resources

 Division
P.O. Box 23795
Washington, DC  20026

Attorney for Appellee

_____
OPINION OF THE COURT
_____

**VANASKIE, District Judge**

This is an appeal from a declaratory judgment in favor of the United States and against defendants/appellants Atlantic Disposal Service, Inc.  ("ADS"), the principal shareholders of

ADS, Alvin White ("White") and Charles Carite ("Carite"), and A.C. Realty, decreeing that each is jointly and severally liable under §107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.A. §§9601–75 (1995), for any future response costs incurred by the United States at a hazardous waste site located in Tabernacle, New Jersey (the "Tabernacle Site"). The district court held, on summary judgment motions, that each appellant was liable under CERCLA as a "person who . . . accepted . . . hazardous substances for transport to disposal or treatment facilities . . . or sites selected by such person." 42 U.S.C.A. §9607(a)(4)(1995). ADS was held liable based upon evidence that its employees had transported approximately 200 drums of hazardous waste to the Tabernacle Site pursuant to an arrangement negotiated by a representative of ADS with the lessees of the Tabernacle Site. White and Carite were held liable based upon the district court's finding that they exercised control over the activities of ADS in 1976 and 1977, when the drums were deposited at the Tabernacle Site.[0] A.C. Realty, a partnership formed by Carite and White which owned the land and buildings occupied by ADS, was held liable on the ground that it was a joint venturer of ADS at the time of the disposal activities at issue here.

Although we agree that the record before the district court established, as a matter of law, the liability of ADS as a

---

[0] Charles Carite was killed in an airplane accident in 1991, and the executors of his estate have been substituted as defendants. During the relevant time frame, Carite and White were the sole shareholders, directors and officers of ADS.

4

"transporter" under §107(a)(4) of CERCLA, 42 U.S.C.A. §9607(a)(4), we find that there are genuine issues of material fact pertaining to the potential liability of White, Carite and A.C. Realty. Specifically, as to White and Carite, the district court erred in assessing liability on the basis of day-to-day control of the affairs of ADS, as opposed to whether White and/or Carite actually participated in the decision to dump drums of hazardous waste at the Tabernacle Site. Because there are genuine disputes pertaining to the knowledge and participation of White and Carite in the Tabernacle Site dumping, summary judgment on their liability is inappropriate. As to A.C. Realty, we find that there are genuine issues concerning the intent of the parties to establish a joint venture relationship, thereby precluding summary judgment on this issue as well. Accordingly, we will affirm the declaratory judgment against ADS, but will vacate the declaratory judgment against White, Carite and A.C. Realty and remand to the district court for further proceedings.

I. **FACTS AND PROCEDURAL HISTORY**

A. **The Statutory Liability Scheme**

"Congress enacted CERCLA to facilitate the cleanup of potentially dangerous hazardous waste sites, with a view to the preservation of the environment and human health." Tippins, Inc. v. USX Corp., 37 F.3d 87, 92 (3rd Cir. 1994). One of the principal purposes of CERCLA is "to force polluters to pay for costs associated with remedying their pollution." United States v. Alcan Aluminum Corp., 964 F.2d 252, 259-60 (3rd Cir. 1992).

CERCLA imposes liability for the costs of cleaning up a polluted site on four separate categories of parties:

> (1)  The owner and operator of a facility from which there has been a release or threatened release of hazardous substances necessitating responsive action, §107(a)(1);

> (2)  A person who owned or operated such a facility at the time hazardous substances were deposited there, §107(a)(2);

> (3)  A person who arranged for the transportation, disposal or treatment of hazardous substances at such a facility, §107(a)(3); and

> (4)  A person who had accepted hazardous substances for transportation to a facility selected by that person, §107(a)(4).[0]

---

[0]Section 107(a)of CERCLA, in pertinent part, states:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section --

> > (1) the owner and operator of a vessel or a facility,

> > (2) any person who at the time of the disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

> > (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

> > (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--

Potentially responsible parties described by subsections (1) and (2) are generally known as "owners" and "operators"; those who fall under subsection (3) are generally known as "generators" and sometimes referred to as "arrangers"; and those who fall under subsection (4) are commonly known as "transporters."⁰ See Atlantic Richfield Co. v. Blosenski, 847 F.Supp. 1261, 1271 (E.D. Pa. 1994). Liability of responsible parties is strict, i.e., not dependent on a finding of fault. See Tippins, 37 F.3d at 92.⁰ This appeal involves the question

---

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by an other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title. 42 U.S.C.A. 9607(a)(1995).

The term "person" as used in §107(a) is defined to include "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State or any interstate body." 42 U.S.C.A. §9601(21).
⁰CERCLA defines the terms "transport" and "transportation" as "the movement of a hazardous substance by any mode." 42 U.S.C.A. §9601(26).
⁰Strict liability is described as "liability that is imposed on an actor apart from either (1) an intent to interfere with a legally protected interest without a legal justification for doing so, or (2) a

7

of whether the record before the district court established that ADS, White, Carite and/or A.C. Realty should be held liable as "transporters" of hazardous substances to the Tabernacle Site.[0]

**B.    The Potentially Responsible "Transporter" Parties**

White and Carite formed ADS in 1963.  ADS was engaged in the business of hauling waste from commercial and industrial establishments.  At the time of incorporation, Carite owned 50 percent of ADS' stock, White owned 49 percent of the stock, and the remaining one percent was owned by White's spouse.[0]  From its incorporation until 1991, when its assets were sold, White and Carite were the sole officers and directors of ADS.  White was the President of ADS; Carite was its Secretary/Treasurer.

As business expanded, White and Carite formed other corporations and partnerships.  In 1971, they incorporated Eastern Solid Waste Equipment Company, Inc. ("ESWECO").  Although initially intended to operate as a distributor of refuse collection equipment, ESWECO essentially served as a maintenance company for the equipment used and buildings occupied by ADS.  ESWECO was owned by relatives of White and Carite, but White and Carite served as the sole officers of that corporation.

Carite and White were also the sole partners in A.C. Realty, which was the owner of approximately 8.5 acres of land

---

breach of a duty to exercise reasonable care, i.e., actionable negligence."  W. Page Keaton, et al., Prosser & Keaton on the Law of Torts §75 at 534 (5th ed. 1984).

[0]There is no dispute that the Tabernacle Site is a "facility" under CERCLA.  Nor is there any challenge to the fact that there has been a release of hazardous substances from this facility.
[0]By 1977, White and Carite each owned 50 percent of the ADS stock.

8

located in Mt. Laurel, New Jersey. Facilities constructed on a three-acre section of this parcel were leased to ADS. In the late 1970's, A.C. Realty leased another acre of land to Atlantic Recovery and Transfer Systems, Inc. ("ARTS"), which operated a waste transfer station adjacent to ADS.[0]

Also in the late 1970's, White and Carite established A.C. Enterprises, a partnership that leased containers and trucks to ADS. In 1982, A.C. Enterprises sold its assets to Churchdale Leasing, Inc., a Subchapter S corporation owned by White and Carite, who were its sole officers and directors. Churchdale Leasing continued to lease rolling stock and containers to ADS.

ESWECO, A.C. Realty, and A.C. Enterprises dealt solely with ADS and other companies established by White and Carite. Neither A.C. Realty nor A.C. Enterprises had any employees; ADS employees performed the work of these partnerships.[0]

C. **The Tabernacle Site**

One of the ADS industrial accounts during the 1970's was a plant operated by USX Corporation in Camden, New Jersey. ADS hauled 55-gallon drums of liquid waste from the USX facility to a landfill in Gloucester County. When the Gloucester County landfill refused to accept the USX drums, arrangements were made to dispose of the drums on a 1-acre wooded parcel in Tabernacle, New Jersey, leased by Robert Ware, an ADS mechanic. Ware's

---

[0]Carite and White were each 50 percent shareholders in ARTS as well.
[0]After the business operations of A.C. Enterprises were turned over to Churchdale Leasing, ADS continued to provide the employees to conduct the leasing business. ESWECO, A.C. Realty and A.C. Enterprises conducted their business at the Mt. Laurel facility leased to ADS.

9

understanding was that ADS would pay him a fixed amount for each drum dumped at the Tabernacle Site.

In 1976, Edith Ruhl, who was then Ware's wife, saw three trucks arrive at the Tabernacle Site and unload 55-gallon drums and other containers. Painted on the doors of the trucks were the words "Atlantic Disposal Services." An ADS dispatcher, William Milsop, acknowledged sending trucks containing drums of liquid waste to the Tabernacle Site.

In 1982, investigators of the Burlington County, New Jersey Health Department discovered 193 barrels and containers at the Tabernacle Site. Attached to at least one of the drums found at the Tabernacle Site were USX shipping documents.

Pursuant to a "Unilateral Administrative Order" issued by the United States Environmental Protection Agency ("EPA") in February of 1984 pursuant to §106(a) of CERCLA, 42 U.S.C.A. §9606(a) (1995),[0] ADS removed all drums and related waste from the Tabernacle Site. Analyses of the contents of the drums revealed a number of hazardous substances. Soil sampling disclosed a release of the hazardous substances to the environment. Sampling from monitoring wells confirmed the existence of groundwater contamination.

A Remedial Investigation and Feasibility Study ("RI/FS") was undertaken by EPA in 1985. As a result of the RI/FS, "special notice letters" were issued in July of 1988 to

---

[0]Section 106(a) authorizes EPA to issue "such orders as may be necessary to protect the public health and welfare and the environment" from an imminent and substantial danger resulting from an actual or threatened release of hazardous substances.

10

ADS and USX, affording them the opportunity to negotiate an agreement to perform the Remedial Design and Remedial Action ("RD/RA") proposed by EPA for the Tabernacle Site.[0]  The ensuing negotiations resulted in an agreement by USX to perform the RD/RA.  ADS, however, refused to participate in the environmental remediation work.

### D.  **Procedural History**

In August, 1990, the United States commenced this cost recovery action pursuant to Section 107 of CERCLA, 42 U.S.C.A. §9607 (1995), naming as defendants only USX and ADS.  Liability was sought to be imposed on USX as a "generator," and ADS was alleged to be liable as a "transporter."

In July of 1992, the United States amended its complaint, adding as defendants White and Carite.  The United States claimed that White and Carite were personally liable for the transportation of USX waste to the Tabernacle Site based upon their alleged pervasive control of ADS.  The United States also added as defendants Churchdale Leasing, ESWECO, and A.C. Realty, alleging that these entities were "joint venturers" of ADS in connection with the transportation of wastes containing hazardous substances to the Tabernacle Site.  USX filed cross-claims against each of these parties.[0]

---

[0]The "special notice letters" were issued pursuant to §122(e) of CERCLA, 42 U.S.C.A. §9622(e)(1995), which establishes the mechanism for negotiating an agreement with potentially responsible parties to undertake environmental remediation work.
[0]In addition, USX named Anthony Carite, Jr., Charles Carite's brother and the operations manager of ADS, as a third-party defendant.  Pursuant to a stipulation of dismissal, the USX claims against Anthony Carite, Jr. were later dismissed.

In an opinion dated December 6, 1993, the district court ruled that ADS, A.C. Realty, Churchdale Leasing, and ESWECO had been engaged in a joint venture that encompassed the transportation of waste containing hazardous substances to the Tabernacle Site.[o]  In separate Memoranda and Orders filed on January 12, 1994, the district court ruled that ADS, White and Carite were liable as "transporters" under §107(a)(4) of CERCLA, and USX was liable as a generator under §107(a)(3) of CERCLA. The district court, however, declined to grant summary judgment in favor of the United States on its damage claim of $1,778,518.89, finding that there were genuine issues of material fact "regarding the reasonableness of the RI/FS and whether the United States' response costs were incurred due to a `needless and expensive monitoring study.'"  (A. 127a.)

By letter dated March 11, 1994, the United States informed the district court that it had reached a settlement with USX and Attwoods, Inc.[o]  Under the terms of the settlement, USX agreed to pay the United States $1.71 million of the $1.78

---

[o]The December 6, 1993 Memorandum and Order addressed cross-motions for summary judgment filed by USX, as third-party plaintiff, and by ESWECO and Churchdale Leasing, two of the third-party defendants.  The United States had separately moved for summary judgment on the joint venture issue.  While the district court did not address the motion of the United States on this point, the parties have acknowledged that the ruling on USX's motion applies with equal force to the claims of the United States against A.C. Realty as an alleged joint venturer.

[o]Attwoods had purchased the assets of ADS and the stock of Churchdale Leasing and ESWECO in March of 1991.  Ownership of these companies was transferred to an Attwoods subsidiary known as Paul C. Murphy, Inc.  The United States sued Attwoods and Paul C. Murphy, Inc. as purported corporate successors of ADS.  USX filed cross-claims against these parties.  In a Memorandum and Order dated January 11, 1994, the district court denied cross-motions for summary judgment on the issue of successor liability.  (A. 100a-22a.)

12

million claimed as recoverable response costs.  The March 11, 1994 letter explained:

> The settlement reached by the settling parties will encompass the following claims set forth in the pleadings in this action:
>
> (1)  All the United States' claims in its amended complaint except for a request for declaratory judgment for future response costs against the non-settling defendants; and (2)  All claims by and between USX and defendants Attwoods, Churchdale Leasing, [ESWECO and Paul C. Murphy, Inc.].  Thus, the settlement will resolve all triable issues related to the United States' claims and the United States has no need at this time to participate in the pretrial conference scheduled for March 16, 1994.  [A. 180-81a, emphasis added.]

In a footnote in this letter, the United States also stated:

> The Court has already ruled that the non-settling defendants are liable to the United States under Section 107(a) of CERCLA. Since the settlement will resolve the United States' claim for past costs, the only relief that the United States may ask this court for is a declaratory judgment of liability for future costs against the non-settling defendants.  [A. 180a.][0]

The United States did not participate in the final pretrial conference, which was conducted on March 16, 1994.  A jury trial commenced in June of 1994.  In light of the settlement with the United States, the trial was limited to cross-claims between USX and Attwoods, on the one hand, and the ADS Defendants on the other.[0]  After several days of trial, USX, Attwoods, and

---

[0]The non-settling parties were ADS, White, Carite and A.C. Realty, who will be referred to collectively as the "ADS Defendants."

[0]USX sought recovery of $1.71 million paid to settle the United States' claims; $3.59 million incurred in conducting the RD/RA at the Tabernacle Site, and a declaration that ADS, White,

the ADS Defendants announced that they had reached a settlement. The basic terms of the settlement were that the ADS Defendants would pay $2 million to USX, and in exchange would receive a general release from USX as well as an agreement by USX to indemnify them for any future response cost incurred by the United States at the Tabernacle Site. They also would obtain from Attwoods a general release with respect to the Tabernacle Site. (A. 59a.-65a.)

At the time that counsel for the ADS Defendants placed on the record the settlement of the cross-claims, he requested "that this case . . . be dismissed with        prejudice. . . ." (A. 61a.)  Counsel for the United States objected to the dismissal with prejudice, observing:

> This Court already ruled each one of those defendants is a liable party here.  A settlement with the USX and Attwoods defendants deals with our present and past costs, but it does not deal with potential future costs at the site.
>
> I just want to let the Court know that if they were to move to dismiss with prejudice, the Government might oppose that motion at that time.  [A. 66a-67a.]

On August 15, 1994, the United States filed a motion for a declaratory judgment against the ADS Defendants for future costs that may be incurred at the Tabernacle Sites.  The ADS Defendants responded to the request for declaratory relief by moving for dismissal for failure to prosecute arising out of the

---

Carite and A.C. Realty were liable for all future costs incurred in connection with the RD/RA at the Tabernacle Site.  Attwoods sought recovery of $2.71 million purportedly spent in connection with the cleanup of the Tabernacle Site.  (A. 147a.-48a.)

fact that the United States had not participated in the preparation of the final pretrial order and had not attended the trial.  In an Opinion dated September 20, 1994, the district court granted the United States' motion and denied the ADS Defendants' motion.

The ADS Defendants filed a timely notice of appeal, reasserting that the United States had effectively abandoned its request for declaratory relief.  They also argue that the district court's summary judgment rulings on liability are erroneous.

The district court had jurisdiction pursuant to 28 U.S.C. §1331 as the United States' claims arose under federal law.  We have appellate jurisdiction under__